PEOPLE ex rel. PEABODY v. WOODS, Police Com'r.

(Supreme Court, Appellate Division, Second Department. February 28, 1916.)

MUNICIPAL CORPORATIONS ⬤⟿185—DISMISSAL OF POLICE OFFICER—FALSE STATEMENT—SUFFICIENCY OF EVIDENCE.

On certiorari to review the dismissal of a police officer, evidence *held* not to sustain the charge that the officer was guilty of a conscious false statement to the inspector that there was a blotter over the lower part of a page when he signed his name out of chronological order without noticing the entries below.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 492–509; Dec. Dig. ⬤⟿185.]

Jenks, P. J., and Putnam, J., dissenting.

Certiorari by the People, on relation of William F. Peabody, to review a determination of Arthur Woods, as Police Commissioner of the City of New York, in dismissing relator from the police force. Writ sustained, determination annulled, and relator restored to his position.

Argued before JENKS, P. J., and THOMAS, STAPLETON, MILLS, and PUTNAM, JJ.

Moses H. Grossman, of New York City, for relator.

Frank Julian Price, of New York City (Thomas F. Magner, of Brooklyn, on the brief), for respondent.

PER CURIAM. The evidence shows that the relator did not enter his signature in the blotter in chronological order, and that he did not prefer charges against Lieut. Adams for making the premature sketch of the entries. It is incredible that the acting commissioner, who, in the awkward situation of determining a question of veracity or recollection between his highest superior and the relator, conducted the proceeding fairly, could have dismissed the relator from the force on account of the first two charges. Indeed, he referred to the third charge as the serious one. While the relator may have been negligent in failing to discover the subsequent entries, even in the probable mental disturbance caused by the sudden appearance of, and abrupt rebuke by, the commissioner, and while the acting commissioner was authorized to find that the relator did use the words, "I don't remember," the evidence does not sufficiently show that the defendant was guilty of conscious false statement to the inspector. He should be convicted only by clear proof of the offense. The words, "I don't remember," if given their usual meaning, would have indicated mere flippancy, which is not ascribed to him. The evidence fairly shows that he also said, "I don't know whether it was there or not." That is an understandable statement. What the relator said as the commissioner, declining to hear explanation, was about to depart, should be considered in connection with the information that Lieut. Adams had given the relator regarding the entries. Viewed in such light, it has not the significance that must have been given it by the trial officer.

Relator's statement, "I am positive there was," meaning a blotter

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

over the lower part of the page, is entirely consistent with his earlier statement: "I saw nothing there at all at the time. It seems impossible for me to do it, but I did it." Evidently, upon reflection, especially after the suggestion made by his lieutenant, he had, when he testified later, come to the certain conclusion that the blotter must have been there, and so then said, "I am positive there was." It was his reasonable inference, not an assertion that he remembered actually seeing the blotter upon the page. The interrogation does not seem to have pinned the relator down to such exact inquiry as this, "Do you remember that you actually saw the blotter on the page?" We consider that the relator came in the end to the belief that there was an interposed piece of blotting paper, as a rational inference from the fact that he did sign his name without noticing the entries below, and the later advice by the lieutenant as to the blotter, and, further, that such inference was, under the circumstances, not unreasonable for him to draw, and should have been accepted by the commissioner as representing the truth.

It is concluded that the writ should be sustained, the determination of the acting commissioner annulled, and the relator restored to his position, with $50 costs and disbursements.

THOMAS, STAPLETON, and MILLS, JJ., concur.

PUTNAM, J. (dissenting). I cannot excuse or palliate false testimony found under the third specification. Relator was called before Inspector Schmittberger for investigation on October 14th. He then said that, when he came in, "I saw nothing in the blotter except the line, and I filled it in 3:55 p. m." He repeated that he did not see the commissioner's entry at the foot, nor the roll-call entry. He could not explain this oversight. On examination of Lieut. Adams, the inspector started to suggest that something covered these entries, and Adams responded that a blotter *may be* on top of it, when the relator (interrupting) said:

"The lieutenant handed me a pen, and I put myself in. I saw nothing there at all at the time. It seems impossible for me to do it, but I did it."

Yet at the adjourned hearing on November 6th relator had brought himself to testify that he was "under the opinion" that a blotter covered the entry. From being under such an "opinion," his certitude rose to answering:

"Q. Was there a blotter on this book? A. I am positive there was."

Here was an entry improper as to time. Police rule 486. It is like a false entry in a ship's log, to which a penalty attaches (R. S. U. S. § 4292 (U. S. Comp. St. 1913, § 8038). That loose blotting paper covered the lower page came as a later and dubious excuse.

The head of the police force has to raise the standard of scrupulous exactness in the entries officially made in station house blotters. Such entries often become the basis of officers' testimony in civil and criminal causes. But he has a still higher duty. This is to raise and enforce a standard of strict truth. Formerly it was not infrequent

that a patrolman's word carried small weight with juries. When, after trial, the commissioner finds testimony consciously false, I am unwilling to hold he erred, or that he could not impose the extreme penalty.

JENKS, P. J., concurs.